# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **ELIZABETH L. MANNING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:10CV928** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Elizabeth Manning, brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying

her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1]  The Court has

before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a POD, DIB, and SSI on August 14, 2006 alleging a

disability onset date of June 1, 2006.  (Tr. 58-61, 100-108.)[2]  The applications were denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

initially and again upon reconsideration. (*Id.* at 58-74.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 75.) At the March 5, 2009 hearing were Plaintiff, her sister, her attorney, and a vocational expert ("VE"). (*Id.* at 21.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 10-20.) On October 6, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1-3.)

## II. FACTUAL BACKGROUND

Plaintiff was 45 years old on the alleged disability onset date. (*Id.* at 19.) She had at least a high school education and was able to communicate in English. (*Id.*)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423 (d)(3), 1382c(a)(3)(D).

3

months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[5] ("RFC") and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2006. (Tr. 12.) The ALJ next found in step two that Plaintiff had the following severe impairments: degenerative disc disease, depression, and anxiety. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.) At step four, the ALJ determined that Plaintiff could not return to her past relevant work. (*Id.* at 18.) At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that she could perform. (*Id.* at 19.)

## B.  Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence. (*Id.* at 14.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work which allows alternating sitting for 45 minutes and standing for 30 minutes, which requires walking 100 feet, which requires lifting 10 pounds

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

occasionally and 20 pounds frequently, which requires occasional stooping and crouching, and which requires the performance of simple, routine tasks in a low production and low stress environment. (*Id.*)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff had past relevant work as a sewer, which is light, semi-skilled work. (*Id.* at 19.) The ALJ found further that Plaintiff was unable to perform work at this level of exertional activity and, thus, could not perform her past relevant work. (*Id.*) The ALJ found too that Plaintiff had acquired no work skills from her past relevant work that would transfer to other jobs within her residual functional capacity. (*Id.*)

## D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). The ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform, such as an information clerk and a food and beverage order clerk. (Tr. 19-20.)

# V. ANALYSIS

Plaintiff raises two issues. First, she contends that the ALJ erred by not finding that she met Disability Listing 1.04 for spinal disorders. (Docket Entry 10 at 2-4.) Second, she argues that the AJL erred in assessing her RFC. (*Id.* at 4-8.)

## I. The ALJ's Step Three Conclusion Is Supported by Substantial Evidence.

Plaintiff argues that at step three the ALJ "did not even mention Listing 1.04, much less properly analyze Ms. Manning's impairments in light of its criteria." (Docket Entry 10 at 2.) To satisfy that listing, a plaintiff first must show that she suffers from a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." *Id.*

Lastly, she must show one of the following:

A. Evidence of nerve root compression characterized by neuronatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

B. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by

chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* Plaintiff never specifies exactly which of the foregoing three subsections she allegedly met. (*See* Docket Entry 10 at 2-4; Docket Entry 14 at 1-2.) However, Plaintiff does state that she "suffers from severe foraminal stenosis at L4-L5 which compromises the nerve roots exiting from this level." (Docket Entry 10 at 3.) Plaintiff's brief therefore appears to only invoke the requirements of subsection (A) and highlights no evidence supporting subsections (B) or (C). (*See id.*) Consequently, the Court need address only Listing 1.04(A).

More specifically, in support of this claim Plaintiff points to the following evidence.

> Ms. Manning's June 15, 2006 MRI demonstrated large bilateral L4 pars defects with grade II and III spondylolisthesis. (Tr. 183). There were also associated Modic type 2 discogenic endplate changes, severe disc space narrowing, as well as severe bilateral neural foraminal narrowing and "unroofing" of the L4-L5 disc. There was sacralization of the L5 vertebral body. *Id.* Dr. Roy commented that her L5 bone was "essentially sitting on the sacrum" and noted that she was positive for pain which travelled from her back into her legs, consistent with an L5-S1 distribution. (Tr. 167-68). Ms. Manning's November 2006 MRI confirmed severe bilateral foraminal stenosis at L4-L5 (Tr 261) and her January 24, 2008 MRI demonstrated 40% anterolisthesis of L4 onto L5 with severe disc degeneration loss of height L4. (Tr 410). The alignment abnormality and facet arthropathy continue to result in severe bilateral foraminal stenosis with mild to moderate central canal narrowing. *Id.*

(Docket Entry 10 at 3.)

From this, Plaintiff contends that:

> This medical evidence demonstrates that Ms. Manning suffers from severe foraminal stenosis at L4-5 which compromises the nerve roots exiting from this level. This nerve root compromise has caused her to suffer from severe pain in her lower back which travels through her legs along with numbness,

which is neuro-anatomically consistent with lower lumber nerve impingement. (Tr. 167-73; 199-201; 267-68; 312-13; 328; 395-97; 402-40.) This pain has also been correlated with several positive bilateral straight leg raises. (Tr 167-68; 169-73; 395-97). Her lumbar flexion and extension are limited due to this pain and toe and heel walking are demonstrably painful as well. (Tr 167-68). Thus, the medical evidence demonstrates that Ms. Manning must be found disabled pursuant to Listing 1.04 for spinal disorders as her conditions evidence the presence of all requisite criteria.

(Docket Entry 10 at 3.)

Defendant, in turn, contends that Plaintiff "points to no evidence showing motor loss and either reflex or sensory deficits [and] the record demonstrates that she does not meet these criteria." (Docket Entry 13 at 3.) Defendant argues that the record supports the ALJ's finding that Plaintiff's condition fell short of the requirements for a listed impairment. (*Id.*)

In response to Defendant's argument that Plaintiff has failed to point to evidence demonstrating a lack of motor loss and either reflex or sensory deficits to meet Listing 1.04A (Docket Entry 13 at 3), Plaintiff argues that that records demonstrate that she has repeatedly suffered from cramping and muscle spasms in her legs, which limit her ability to stand and walk, sometimes to the point where she must use a cane because she lacks the strength to walk on two legs. (Docket Entry 14 at 1 citing Tr. 167-73; 386-87.) Plaintiff contends too that she has demonstrated sensory disturbances with numbness spreading through her legs. (*Id.* citing Tr. 167-73; 199-201; 267-68; 312-13; 328; 395-97; 402-40.) Finally, Plaintiff argues that even though "not every single one of [Plaintiff's] straight leg raises were positive," they were "positive on multiple occasions" and that this is sufficient to meet the requirements of the listing. (Docket Entry 14 at 2 citing Tr. 167-68, 169-73; 395-97.)

Having reviewed the pleadings and the entire record, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet a Listing. The evidence on which Plaintiff relies does not suffice to establish any error. The record contains little to no evidence suggestive of motor loss or muscle weakness. (Tr. 173 (indicating no motor deficit and that Plaintiff was "able to walk heel to toe" at 7/18/06 examination), 199 and 201 (anesthesia pain consultation note dated 9/18/06 indicating that patient has "No weakness." and "The patient ambulates without an assistive device. She has a normal gait. She is able to heel walk and toe walk without difficulty. . . . She has a negative straight leg raise bilaterally."), 251 (11/05/06 exam finding "MS/Extremity: No evidence of focal tenderness or deformity. Full ROM throughout with no evidence of weakness."), 313 (chronic pain management consultation note dated 6/11/07 indicating "The patient ambulates without an assistive device and has a normal gait. No gross motor weakness appreciated."), 387 (11/06/08 examination stating "Motor: normal strength bilaterally, upper extremities, lower extremities."), 395 and 397 (6/16/08 progress note indicating "[N]o weakness in arms. [N]o weakness in legs." and "Sensory: normal. Motor: normal strength bilaterally. Coordination: normal. Reflexes: 2+ bilaterally, Babinski: negative, Gait: normal . . . .").) Moreover, reflex losses are not demonstrated in the record. (Id. at 168 (8/29/06 progress note indicating "Reflexes equal and symmetrical."), 201 (9/15/2006 progress note "Reflexes are 2+ at the ankles and knees bilaterally with downgoing toes."), 397 ("Reflexes: 2+ bilaterally)). Similarly, sensory findings were also typically normal. (Id. at 201 (9/15/2006 progress note "Sensory is intact to light touch and cool in all dermatomes."), 251 (11/5/06 report "Intact motor and

sensory throughout."), 257 (same), 387 (11/06/08 progress note indicating no sensory anomalies).) In sum, the record reflects that Plaintiff suffered from mild central canal and foraminal stenosis, but fails to show that she met the specific nerve compression requirements set out in Listing 1.04(A). At a minimum, Plaintiff has not shown that the record lacks substantial evidence to support the ALJ's determination that Plaintiff failed to carry her burden of showing satisfaction of a listing at step three. Plaintiff's instant challenge cannot succeed.

## II.    The ALJ's RFC Assessment Is Supported by Substantial Evidence.

Plaintiff also contends that the ALJ improperly evaluated her RFC. (Docket Entry 10 at 4-6.) Specifically, she contends that this conclusion of the ALJ is not borne out by substantial evidence: "[T]he totality of the evidence is inconsistent with the claimant's alleged persistence, intensity and limitations of her symptoms. The record shows that the claimant's symptoms have responded to medication and other treatment modalities." (*Id.* quoting Tr. 17-18.) In support of this contention Plaintiff asserts (1) that nine sessions of physical therapy did not resolve her pain and that medications were only moderately effective (*id.* at 167-73), (2) her treating physician, Dr. Roy, did not believe that conservative treatment would help in the long run and that she would eventually need surgery (*id.* at 167-68), (3) that the ALJ failed to acknowledge that her relief from epidural injections was only temporary and that "she had to return time and again for more injections," (*id.* at 202-65, 400-440) (4) that in concluding that her pain must not have been that severe (*id.* at 15-16), the ALJ ignored the fact that she had difficulty attending pain management appointments with Dr. Cullen because of

distance, transportation, and financial difficulties (*id.* at 328), that this should not be held against her, and that her attendance improved when she was able to receive treatment closer to her home (*id.* at 395-407), and that (5) despite the ALJ's finding to the contrary (*id.* at 18), she does not truly maintain a household for herself and her two children because she receives health assistance services prescribed by her doctor three hours each day, and the help of her sister, both of whom assist her with bathing, dressing, tying her shoes, helping with her hair, all the housekeeping, and fixing her meals (*id.* at 39, 47, 390).

### a. Credibility

This argument essentially contests the ALJ's credibility determination. The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain,

treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p, 1996 WL 374186, at *4. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, substantial evidence supports the ALJ's assessment of Plaintiff's credibility, including allegations of pain. The ALJ concluded that:

> Although the claimant has established medically determinable impairments which can reasonably be expected to produce her alleged symptoms, the totality of the evidence is inconsistent with the claimants alleged persistence, intensity and limitations of her symptoms. The record shows that the claimant['s] symptoms have responded to medication and other treatment modalities. Moreover, she engages in a range of activities which are consistent with her residual functional capacity. She maintains a household for herself and her 2 children. The evidence further shows that the circumstances under which the claimant got her home health care are suspect.

13

In addition, the undersigned finds that the claimant's bogus explanation for not taking care of her substance abuse requirement for her DWI diminishes her credibility. The undersigned also observed that the claimant walked with a normal gait into the hearing room which is inconsistent with her testimony that she needed a cane to walk. Moreover, the claimant's sister testified that it was her opinion that the claimant could work if she would be allowed to alternate sitting and standing. The claimant's sister did not state that it was her opinion that the claimant could not do any work.

The undersigned's conclusion that the claimant is able to work is further supported by the opinions of the State Agency Medical Consultants. . . . The consultants concluded that the claimant could perform a range of medium work which required lifting 50 pounds occasionally, lifting 25 pounds frequently, which required standing 6 hours, and which required sitting 6 hours during a 8-hour workday. While the undersigned has given significant weight to the opinions of the Consultants that claimant is not disabled, the undersigned has evaluated the evidence in the light most favorable to the claimant and has limited her to a sedentary work with the restrictions noted above.

Considering the treatment notes of the claimant's treating physicians and the conclusions of the examining physicians, together with the opinions of the Medical Consultants . . . , the undersigned finds that the totality of the medical evidence does not rule out the performance of sedentary work with the restrictions noted above. In light of the inconsistencies noted above, together with the totality of the medical evidence the undersigned does not find persuasive claimant's allegations of inability to perform any work. However, the undersigned has evaluated the evidence in the light most favorable to the claimant, and acknowledge that the claimant has some limitations due to her impairments. The undersigned has also considered the effects of the claimant's medication and pain. Those limitations are reflected in her residual functional capacity. The undersigned limited the claimant to perform sedentary work . . . which allows alternating sitting for 45 minutes and standing for 30 minutes, which requires walking 100 feet, which requires lifting 10 pounds occasionally and 20 pounds frequently, which requires occasional stooping and crouching and which requires the performance of simple, routine tasks in a low production and

low stress environment. I have given significant weight to the treatment notes of Dr. Wilson and Dr. Cullen because they are consistent with each other and with other substantial evidence of record.

(Tr. 18.)

As noted, the ALJ concluded that "the claimant has established medically determinable impairments which can reasonably be expected to produce her alleged symptoms . . . ." (*Id.*) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that "the totality of the evidence is inconsistent with the claimant's alleged persistence, intensity and limitations of her symptoms." (*Id.*) The ALJ's conclusion is supported by substantial evidence. It is significant that the record is barren of a relevant opinion that Plaintiff is permanently disabled or treatment records indicating restrictions more significant than those set forth in the RFC. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (holding that a lack of physical restrictions from a treating source tends against a finding of total disability); *Hilton-Williams v. Barnhart*, Civ. A. No. 7:05cv00674, 2006 WL 3099648, *3 (W.D.Va. Oct. 24, 2006) (unpublished) (finding that a mere diagnosis absent any evidence of actual functional limitations was insufficient to establish disability). Having considered all the briefing and the entire record, the undersigned concludes that the ALJ did not err in finding that the record was inadequate to support Plaintiff's alleged inability to do simple, low stress, sit-stand sedentary work. The ALJ's credibility determination is supported by substantial evidence. [6]

---

[6] For example, as Defendant correctly points out (Docket Entry 13 at 7 n. 2) the ALJ noted that Plaintiff testified that she needed a cane to walk, yet walked into the hearing with a normal gait without the use of one. (Tr. 18, 35-36.) Also her sister reported that she was unaware of any need for

Plaintiff's arguments to the contrary, described above, are not persuasive. The ALJ did not place undue reliance on medical records regarding relief from epidural injections, but merely noted that the injections yielded benefits without side effects. Substantial evidence in the record bears this conclusion out. (Tr. at 267 (1/10/07 pain clinic consultation progress notes indicating "The patient underwent epidural steroid injections x2, the first in September and the second in October. Following the initial injection, the patient had significant sustained relief of her radicular symptoms. She continued to have some significant midline back pain and requested a second epidural steroid injection in October."), 312 (5/25/07 pain consultation progress note indicating "I have discussed options with the patient and she wants to do a fourth and fifth epidural steroid injection. She felt her first injection was more beneficial than the second and third."), 395 (6/16/08 progress note indicating "She had been getting epidurals . . . and they did help her."). Moreover, Dr. Roy's conclusion was not arbitrarily disregarded. As the ALJ pointed out, although in August 2006, Dr. Roy stated that he did not believe conservative treatment would help Plaintiff's symptoms in the long run and that she would probably require surgery (Tr. 15 referencing 168), in July 2008, Plaintiff reported to Dr. Wilson that she was feeling better since having a lumbar transforaminal injection (*id.* at 400). Likewise, there is substantial evidence on the record to support the ALJ's conclusion that Plaintiff maintained a household, within the limitations set forth in her RFC, as part of her daily activities. (Tr. 138, 140-41, 228; *see also* Tr. 18 ("Moreover, she engages in a range of activities which are consistent with her residual functional capacity. She maintains a household for herself and her 2 children.").)

Plaintiff to use a cane or walker. (*Id.* at 144, 175, 201, 251, 313.)

Also, contrary to Plaintiff's contention (Docket Entry 10 at 4-5), the ALJ did not treat the failure to pursue treatment as a primary factor in assessing her claimed incapacity to work. (Tr. 15-16 "In January 2007, Dr. Cullen reported that the claimant had done well with her back pain for several months after her injections, but that she had fallen off of [a] truck several weeks after her last injection. The claimant reported that her prior 2 epidural injections had significantly helped her and Dr. Cullen administered a third injection. Dr. Cullen also stated the claimant would not be a candidate for chronic narcotic therapy because of the stressors in her life and her inability to keep all of her appointments.") However, the ALJ did, as Defendant (Docket Entry 13 at 8) correctly points out, note Dr. Cullen's observation that Plaintiff seemed to want narcotic pain relievers prescribed but was not working with him to build the baseline of information needed to permit this to happen. (Tr. 16 ("In addition, in August 2007, Dr. Cullen also noted that the claimant had consistently asked for narcotic medications, but that she told the claimant that she would first have to have a psychological assessment. Dr. Cullen added that the claimant had been unreliable in keeping her appointments, which would be necessary if she were taking narcotic drugs." (referencing Tr. 316).) Plaintiff has failed to demonstrate, and the undersigned finds, no significant error here.

### b. Carpal Tunnel and Post Traumatic Stress Disorder

Second, Plaintiff asserts that the ALJ erred in not concluding that Plaintiff's Post Traumatic Stress Disorder ("PTSD") and bilateral carpal tunnel syndrome ("CTS") were severe impairments. (Docket Entry 10 at 5-6.) In support, Plaintiff asserts that she suffered from irritation of her CTS with numbness in her hands since 2004 (Tr. 204), that this condition

has continued to cause her pain and numbness in her hands (*id.* at 334), and that her hands often get numb after repetitive activity (*id.* at 38-39). This is particularly problematic, Plaintiff contends, because the ALJ concluded that she could perform sedentary work, where one is required to use their hands frequently, and Social Security Ruling 96-9p notes that "Most unskilled sedentary jobs require good use of both hands and the fingers, i.e., bilateral manual dexterity." SSR 96–9p, 1996 WL 374185, at *8 (1996).

Plaintiff elaborates on this claim further, contending that her doctors corroborated her statements as to the severity of her CTS because:

> She was diagnosed with CTS by her doctors in December of 2004 and was noted to have numbness and tingling in her right wrist. (Tr. 204). These symptoms have continued. (Tr 334). Her doctors even advised her to wear a splint. (Tr 204). When a doctor prescribes a device to assist an individual with a medical impairment, the doctor is acting on the basis of a diagnosis which the doctor has determined to exist, not some symptom which the patient reports, but the doctor believes to be unsupported. Therefore, Defendant is still unable to rebut Plaintiff's contention that the ALJ erred by not considering the large impact CTS has on the sedentary occupational base.

(Docket Entry 14 at 2.)

Step two of the sequential evaluation process requires the ALJ to determine if the claimant has any severe medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). Social Security regulations indicate that a severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." *Id.* §§

404.1521(a), 416.921(a).   Examples of basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

*Id.* §§ 404.1521(b), 416.921(b).   The claimant has the burden of providing objective medical evidence and other evidence to determine her medical impairments.   *Id.* § 404.1512(a), 416.912(a); *see also Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).   If an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC.   20 C.F.R. §§ 404.1520(e), 416.920(e); *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

Here, as explained below, the ALJ's failure to mention CTS at step two implies not that he ignored evidence on the record relevant to that issue, but that there was simply not enough evidence to warrant addressing CTS.   And, in combination with the other evidence and considering the ALJ's numerous reasons for finding Plaintiff's complaints not credible, substantial evidence supports the ALJ's decision not to include limitations related to CTS in the RFC determination.   As an initial matter, with the few exceptions listed below, Plaintiff's physical examinations either fail to mention CTS entirely or contain findings suggesting a full range of functioning in her upper extremities, including her wrists.   (*See, e.g.*, Tr. 386-87

(11/06/08 progress note indicating normal range of motion in wrists, no synovitis in wrists, and no diagnosis or assessment of carpal tunnel syndrome), 396-97 (6/16/08 progress note indicating back and leg pain only and normal upper extremity joints).)

Even the evidence Plaintiff points to in support of her contention that CTS renders her disabled, or restricted beyond the scope of the RFC set forth by the ALJ, does not demonstrate any physical limitations resulting from CTS. Plaintiff points to a December 2004 progress note from a doctor, which she characterizes as a CTS diagnosis. (Docket Entry 14 at 2.) That handwritten progress note is dated roughly sixteen months prior to the alleged onset date. (Tr. 204.) It states "12-29-04[.] Here for f/o[.] Doing OK now that she is back at work full time as sewer[.] She is having pain in [right] wrist [with] numbness [and] tingling in 1st [and] third digits too . . . . Has [history of] CTS – been wearing splints at night [with] min relief . . . advised to wear splints. Use heat, rest . . . ." (*Id.*) There is also a clinic note dated February 7, 2008, which Plaintiff references, that states that her "CTS [is] acting up" and that she is "having bad [right] hand numbness." (Tr. 334.) Finally, there is Plaintiff's own testimony that her hands often get numb after repetitive activity. (*Id.* at 38.)[7] To sum, there is simply not enough evidence on record to demonstrate that Plaintiff's CTS causes Plaintiff even minimal vocational limitations. *See, e.g., Camarillo v. Colvin*, No. 8:12–cv–355–T–33TBM, 2013 WL 4789244 (M.D. Fla. Sept. 9, 2013) ("[I]t is worth noting that while Plaintiff criticizes the ALJ's failure to include CTS in his RFC assessment, Plaintiff wholly fails to identify limitations caused by the condition which are supported by the medical record and ignored by

---

[7] The undersigned has reviewed the entire record and has found no additional references to CTS that would materially alter the conclusion set forth herein.

the ALJ. Moreover, while the medical record supports an impression for CTS, it otherwise does not support any clinical findings for significant limitations in the function of Plaintiff's hands."); *Cross v. Commissioner of Social Sec.*, Civil Action No. 07-950, 2008 WL 4425851, *9 (W.D. Pa. Sept. 30, 2008) ("[A] disability claimant must show more than a mere diagnosis. A disability claimant must show specific functional limitations from the condition that interfere with the ability to perform substantial gainful activity, and there is no evidence in the administrative file on which to base a finding that carpal tunnel syndrome interferes with Plaintiff's ability to perform such activity. Based on the foregoing, the ALJ did not err by failing to consider carpal tunnel syndrome as a separate physical impairment").

Last, in support of her contention that her post traumatic stress syndrome was a severe impairment, Plaintiff notes that she was diagnosed with it in May of 2007 (Tr. at 277-80), received treatment, including counseling, from the North Carolina Department of Health (*id.* at 376-85), consistently suffered from anxiety, had trouble sleeping, was hypervigilant and experienced flashbacks, intrusive thoughts, and panic attacks (*id.*) However, as Defendant correctly points out (Docket Entry 13 at 6), the ALJ noted that Plaintiff had been diagnosed with PTSD and found that she had established anxiety and depression as medically significant conditions. (*Id.* at 12-13.) Additionally, in assessing the functional impact of Plaintiff's combined impairments, the ALJ relied on the assessments of the reviewing psychiatrist, who accounted for her PTSD in forming his opinion. (*Id.* at 18, supported at Tr. 305.) Consequently, the Plaintiff has set forth no reason to conclude that the non-exertional limitations set forth in Plaintiff's RFC—amounting to the performance of simple, routine

tasks in a low production and low stress environment—are insufficient to account for her

PTSD. (*Id.* at 14.) Accordingly, Plaintiff's contention that the ALJ's handling of her CTS

and PTSD was reversible error is without merit.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision is supported by substantial evidence. Accordingly, this Court

**RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be

**DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be

**GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 7, 2014